UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
12-CV-21307-Hoeveler/Bandstra

SEAN GELB

    Plaintiff,

                                          JURY TRIAL REQUESTED

v.

JAMES COHAN GALLERY,

    Defendant.

_____/

## AMENDED COMPLAINT FOR DAMAGES
## and DEMAND FOR JURY TRIAL

THE PLAINTIFF, SEAN GELB, through his undersigned attorney, sues the DEFENDANT, JAMES COHAN GALLERY, and alleges as follows:

1. This is a Complaint seeking damages for Destruction of Personal Property, Breach of Contract, Conversion, and Breach of Bailment.

## The PARTIES

2. The Plaintiff, SEAN GELB, ("GELB"), is a resident and domiciliary of the State of Florida.

3. The Defendant, JAMES COHAN GALLERY, ("GALLERY" or "DEFENDANT"), is a New York business entity with its principal

address at 533 West 26th Street, New York, NY, 10001, and concurrently operating premises in Shanghai, China.

## JURISDICTION AND VENUE

4. This is an action involving the diversity of citizenship of the parties, and for damages in excess of $75,000.00 pursuant to 28 U.S.C. § 1332.

5. At all material times, the DEFENDANT maintained substantial minimum contacts with the forum state, including but not limited to conducting and soliciting business, such that the DEFENDANT could reasonably anticipate being haled in to the forum state and does not offend the Court's traditional notions of fair play and substantial justice.

6. Based upon the foregoing, this Court has personal jurisdiction and subject matter jurisdiction over the matter *sub judice*. Therefore, jurisdiction and venue are proper in this Court.

## GENERAL ALLEGATIONS

7. At all material times, GELB is the owner of a unique property identified as a sculptural art work; Untitled (Specimens), 1996 a/k/a Specimen Case created by internationally acclaimed artist, Roxy Paine, ("SCULPTURE").

8. On or about February 1, 2011 the parties entered into a consignment agreement for the sale of the unique SCULPTURE.

9. In addition to owing a duty of care for GELB's property, the Consignment agreement drafted by the GALLERY contractually accepts responsibility "wall to wall" for the unique CASE. See Ex. A.

10. On or about February 3, 2011, the GALLERY voluntarily took into its possession and exclusive care, custody, and control, the unique SCULPTURE in the pristine and unaltered condition it had been maintained by GELB or GELB's agents since its inclusion in the Artist's solo exhibition from March 15-April 26, 1997.

11. The unique SCULPTURE is described as:

> Specimen Case, 1996[1]
> Bondo, Pins, Mahogany, and Glass
> 48 x 60 inches (122 x 152.4cm)

See Ex. B.

12. The unique SCULPTURE has been the subject of written monographs focusing on the artist's successful career and works, see Ex. B, a doctoral dissertation, and critical analyses.

---

[1] The year of execution for the SCULPTURE has been erroneously reported at times as 1995.

13. Subsequent to its initial exhibition the unique SCULPTURE has been photographically documented in two widely distributed texts in the pristine state that it was received by the GALLERY. <u>See</u> Ex. C.

14. On or about June 24, 2011, the GALLERY provided GELB with an Agreement renewing the consignment.

15. Again, in January, 2012, the GALLERY aggressively pursued renewal of the consignment and provided GELB with a new Consignment Agreement executed on or about January 13, 2012.

16. The GALLERY is the exclusive international dealer for the artist, Roxy Paine, and is solely responsible for establishing the prices and market values for unique works by the artist.

17. The Artist's unique works have sold for as much as One Million Dollars.

18. The Consignment renewal drafted by the GALLERY and executed on or about January 13, 2012 increased the fair market value of the unique SCULPTURE to $125,000.00 (One Hundred Twenty-Five Thousand Dollars).

19. However, on or about February 2, 2012, the GALLERY posted the SCULPTURE on the Internet for international sale at the VIP Art Fair

and again increased its fair market valuation of the unique CASE to $150,000.00 to $200,000.00, (Two Hundred Thousand Dollars).

20. The VIP Art Fair is an internet art sales fair created by the DEFENDANT for the purpose of providing global galleries with a venue for selling art works internationally by reaching out through the world wide web, "Connecting the World's Collectors to Leading Art Dealers Online."  See VIP ART FAIR, https://www.vipartfair.com (last visited April 29, 2012).

21. During the entirety of the consignment period, the unique SCULPTURE remained in the exclusive care and custody of the GALLERY.

22. On or about March 6, 2012, the Parties mutually agreed to return the SCULPTURE to GELB's possession.

23. On or about March 6, 2012, the GALLERY sent GELB an e-mail assuring that the SCULPTURE was in the same pristine condition that it had been received more than a year earlier.

24. However, on or about March 8, 2012, before the SCULPTURE left the GALLERY's care and custody, the GALLERY telephoned GELB and left voice mail admitting that "while in our care" the SCULPTURE had been damaged.

25. On or about March 8, 2012 the GALLERY followed-up its telephone message with an e-mail reconfirming that the SCULPTURE was damaged by the DEFENDANT, twice acknowledging and accepting culpability by admitting responsibility:..

   **To follow up on my phone message, I sincerely regret to inform you that *Specimens* has suffered damage while in our care . . . We recognize that this damage occurred under our care . . .**

   See Ex. D (emphasis added by DEFENDANT).

26. The e-mail from the GALLERY includes a photographic image of the damage, (see Ex. E), which demonstrates a segment of wood that has been permanently and irreversibly lost.

27. The e-mail concludes with an apology to GELB for the damage caused by the GALLERY to the unique SCULPTURE.

28. Despite the obvious loss of wood and substantial damage to the integrity of the unique SCULPTURE, the GALLERY attempts to minimize the damage and erroneously characterizes the substantial damage and loss as a "dent."

29. A conservator's examination and report obtained by the GALLERY unequivocally asserts that it's mishandling of the unique SCULPTURE has caused permanent and irreversible loss of wood.

30. The irreversibly damaged wood is an integral part of the unique SCULPTURE created by the artist.

31. As the direct and proximate result of the damage caused by the GALLERY, the unique character and quality of the formerly pristine art work has been forever lost or destroyed.

32. No attempt to repair the damage to this unique work of art can ever eliminate the scars and stigma of restoration or conservation.

33. No attempt to repair the damage to this unique work of art can ever restore its formerly pristine condition or reestablish the value of the SCULPTURE in its undamaged condition.

34. Without its formerly pristine character and quality the art has been irreversibly damaged and irreversibly devalued.

35. Due to the unique character and quality of the SCULPTURE, and the irreversible nature of the damage and devaluation to the integrity of the art work, GELB is entitled to fair market value at the time of loss, established and published by the GALLERY as $150,000.00 to $200,000.00, in its professional capacity as the artist's exclusive representative.

36. As the direct and proximate result of the damage caused to the SCULPTURE by the GALLERY, GELB has been permanently deprived of the full value of the unique property.

37. All conditions precedent to this cause of action have been met or waived.

## **COUNT I - DESTRUCTION OF UNIQUE CHATTEL**

The Plaintiff realleges and reavers Paragraphs 1 - 37 as if fully set forth herein.

38. The GALLERY accepted and owed a duty of care for the unique property belonging to GELB.

39. The GALLERY destroyed GELB's property by irreversibly damaging the unique property and substantially and immeasurably diminishing its value.

40. The GALLERY has admitted its culpability for the destruction of GELB's unique property.

41. GELB is entitled to recover fair market value of the unique property at the time of loss.

WHEREFORE, Plaintiff, GELB, demands judgment against the Defendant and entry of an Order awarding GELB fair market value for his lost property, together with costs, pre and post judgment interest from the

date of loss, and any other award this Honorable Court deems just and proper.

## COUNT II - BREACH OF CONTRACT

The Plaintiff realleges and reavers Paragraphs 1 - 37 as if fully set forth herein.

42. The GALLERY contracted with GELB to accept "wall to wall" responsibility for his unique property.

43. The GALLERY destroyed GELB's property by irreversibly damaging the unique property and substantially diminishing its value.

44. The GALLERY admitted its culpability for the destruction of GELB's unique property.

45. GELB demanded compensation for the loss of his unique property.

46. JAMES COHAN, an owner and operator of the GALLERY, declined to compensate GELB for his loss, instructed GELB via e-mail to cease communications with the GALLERY, and refused to discuss the GALLERY's liability for GELB's loss.

47. The GALLERY breached its contract with GELB by accepting responsibility for GELB's property but failing to compensate the loss.

WHEREFORE, Plaintiff, GELB, demands judgment against the Defendant and entry of an Order awarding GELB fair market value for his

lost property, together with costs, pre and post judgment interest from the date of loss, and any other award this Honorable Court deems just and proper.

## **COUNT III - CONVERSION**

The Plaintiff realleges and reavers Paragraphs 1 - 37 as if fully set forth herein.

48. The GALLERY accepted possession of GELB's unique property.

49. The GALLERY owed a duty to GELB to maintain and protect his unique property from damage.

50. The GALLERY breached its duty of care and destroyed GELB's property by irreversibly damaging the unique property and substantially diminishing its value.

51. The GALLERY's destruction of GELB's unique property is in derogation to GELB's possessory rights and has irreversibly and permanently deprived GELB of the value of his unique property.

52. As the direct and proximate result of the GALLERY's destruction of GELB's unique property, the property has been converted.

53. The remedy for conversion of unique property is an award of Fair Market Value of the property at the time of loss.

WHEREFORE, Plaintiff, GELB, demands judgment against the Defendant and entry of an Order awarding GELB fair market value for his lost property, together with costs, pre and post judgment interest from the date of loss, and any other award this Honorable Court deems just and proper.

## COUNT IV - BREACH OF BAILMENT

The Plaintiff realleges and reavers Paragraphs 1 - 37 as if fully set forth herein.

54. GELB entrusted the GALLERY with possession of his unique property.

55. The GALLERY accepted possession of GELB's unique property and responsibility for maintaining and protecting his unique property from damage.

56. The consignment agreement guaranteed the return of the property in the event that a sale did not occur by expiration or termination of the agreement.

57. While arranging for the return and transport of GELB's unique property, the GALLERY destroyed the property by causing irreversible damage and substantial devaluation of the property.

58. The GALLERY owed GELB a duty as bailee to maintain and protect his unique property from damage.

59. The GALLERY breached its duty and destroyed GELB's property.

60. The remedy for breach of bailment with destruction of unique property is an award of Fair Market Value of the property at the time of loss.

WHEREFORE, Plaintiff, GELB, demands judgment against the Defendant and entry of an Order awarding GELB fair market value for his lost property, together with costs, pre and post judgment interest from the date of loss, and any other award this Honorable Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

61. The Plaintiff demands trial by jury of all issues triable as by right.

Dated: April 29, 2012

Respectfully submitted,

By: __/s/  Brooke Terpening_____
Brooke Terpening, Esq.
FBN: 59574
The Lenamon Law Firm
100 N. Biscayne Blvd, Suite 3070
Miami, FL 33132
Phone: 305.373.9911 x109
Fax: 786.425.2380
E-mail: brooke@lenamonlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by e-mail and U.S. Mail on April 29, 2012 on all counsel or parties of record on the Service List below.

s/Brooke Terpening
Signature of Filer

## SERVICE LIST

Ronald Wolf Adelman
Lynn & Cahill, LLP
58 WEST 40TH
New York, NY 10018
(212) 719-4400
(212) 719-4440 (fax)
radelman@lynncahill.com

John Robert Cahill
Lynn & Cahill, LLP
58 WEST 40TH
New York, NY 10018
(212) 719-4400
(212) 719-4440 (fax)
jcahill@lynncahill.com