UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
12-CV-21307-Hoeveler/Bandstra

SEAN GELB,

     Plaintiff,

v.

JAMES COHAN GALLERY,

     Defendant.              /

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE AND SUPPORTING MEMORANDUM OF LAW**

The Plaintiff, SEAN GELB, by and through his undersigned counsel, hereby files Plaintiff's Response in Opposition to Defendant's Motion to Transfer Venue to the Southern District of New York and respectfully requests that this Honorable Court enter an Order denying the Defendant's motion.  In support of an Order denying the transfer of venue the Plaintiff asserts:

1. The Defendant's motion erroneously alleges that GELB's Amended Complaint states he is an art dealer. (D.E. 14, ¶ 1). Correctly cited, paragraph 2 of the Amended Complaint asserts that GELB is a "resident and domiciliary of the State of Florida." (D.E. 4, Amended Complaint, ¶ 2).  GELB does not allege to be an art dealer.

2. GELB is the owner of the unique and original sculpture "Specimens Case" by the artist Roxy Paine ("SCULPTURE").  The Defendant has repeatedly admitted liability for the "physical damage" to the SCULPTURE. (D.E. 12 , ¶¶ 10, 21, 25; Ex. A, Cohan S.D.N.Y Aff. ¶ 6)

3. The Defendant, JAMES COHAN GALLERY, ("Defendant"), is managed by James Cohan, a partner in 242 Partners L.P., which owns and operates the Defendant gallery. (Ex. A, Cohan S.D.N.Y Aff. ¶¶ 1-2, 12).

1

4. James Cohan also operates an International Art Fair that exists exclusively online. D.E. 12, ¶ 20, (Ex. B. http://www.artinfo.com/news/story/35501/exclusive-gallerist-james-cohan-speaks-about-his-online-vip-art-fair).

5. The Defendant has gallery locations in New York and Shanghai, China. D.E. 12, ¶ 3, (Ex. C, http://www.jamescohan.com/gallery).

6. The Defendant has exhibited and conducted sales annually at Art Basel in Miami Beach, Florida. (*See* Ex. D., http://www.jamescohan.com/exhibitions/2011-11-30_james-cohan-gallery-at-art-basel-miami-beach-2011/;http://www.jamescohan.com/news/art-basel-miami-beach2007/;http://www.artlinkart.com/en/exhibition/overview/5deawBtj/schedule/2009/12 ;http://www.nysun.com/arts/bigger-and-better-at-basel-miami/44479/).   The Defendant is already scheduled to attend and participate in December 2012.

7. At all material times, the Defendant exclusively represented the internationally-acclaimed artist Roxy Paine. D.E. 12, ¶ 16 (Ex. E, http://www.jamescohan.com/artists/roxy-paine/exhibitions/).

8. On January 11, 2012, after soliciting and negotiating with GELB by phone and e-mail, the Defendant drafted and e-mailed to GELB a proposed Consignment Agreement. D.E. 4-1, Consignment Agreement.

9. On January 13, 2012, GELB signed and executed the Consignment Agreement in Miami, Florida.  GELB then returned the executed Consignment Agreement to the Defendant via e-mail. The Consignment Agreement contains no venue or forum selection clause. D.E. 4-1, Consignment Agreement. Similarly, no clause, term, or condition in the Agreement requires that GELB accept return of his SCULPTURE in damaged, repaired, restored, or otherwise

value impaired condition. However, the Agreement does require that the Defendant bear the cost of returning the SCULPTURE to GELB.

10. On March 8, 2012, the Defendant communicated to GELB by telephone and e-mail that the Defendant damaged his SCULPTURE. (Ex. F, GALLERY Email Mar. 8, 2012).

11. James Cohan's signed affidavit confirms that the Defendant caused physical damage to the SCULPTURE.  (Ex. A, Cohan S.D.N.Y. Aff. ¶ 6). The Defendant's Answer also admits to liability for the damages. (D.E .12 ¶¶ 10, 21, 25)

12. The Defendant claims that the physical damage can be patched for a cost of $150-$200. At the time of loss, the Defendant valued the SCULPTURE between $150,000 –$200,000, briefly offering it for sale online in February 2012 at the Defendant's internet art fair.

13. GELB's Miami-based Art Experts have assessed the damages and the Defendant's proposed patch of the SCULPTURE. (Ex. G, Steinbaum Aff.; Ex. H, Fontaine Aff.;Ex. I, Sigurdarson Aff.).

14. On April 2, 2012, after failing to reach an agreement on damages, GELB provided the Defendant with a settlement proposal together with a draft of a complaint to be filed in the Southern District of Florida to resolve the disputed amount of damages.

15. On April 3, 2012, the Defendant (242 Partners LP, d/b/a JAMES COHAN GALLERY) and its insurer, AXA Art Insurance Corp. ("AXA"), raced to the New York Southern District Court and filed a Declaratory Action in a forum shopping attempt to pre-empt GELB's home forum.  (Ex. J, Docket 12-CV-02561-HB).

16. On April 5, 2012, GELB filed his Complaint in this case in the Southern District of Florida.

17. On April 12, 2012, the Defendant (and AXA) continued their attempt at forum shopping by filing a motion in New York to enjoin GELB's suit in the Southern District of Florida.

3

18. On April 27, 2012, GELB filed a motion to dismiss the New York action for lack of personal jurisdiction, lack of subject matter jurisdiction, insufficient service of process, and for failure to state a claim upon which relief can be granted.

19. On April 30, 2012, GELB filed his opposition to the Defendant's (and AXA's) Motion to Enjoin the Florida Complaint.

20. On May 31, 2012, the Defendant unilaterally scheduled GELB for a deposition in New York. Ex. K, Notice of Dep.

21. On June 18, 2012, the Hon. Baer dismissed the Defendant's New York declaratory action and motion to enjoin GELB's Florida law suit, finding that the New York complaint was an improper anticipatory filing designed to deprive GELB of the forum of his choosing.  In that order, the Judge decried the Defendant's "procedural gamesmanship."  (D.E. 14-4, S.D.N.Y. Order, at *3).

22. As with the New York pleadings, the Defendant's Motion for Transfer attaches the confidential settlement proposal and related documents, which are expressly and boldly marked, For Settlement Purposes Only. (D.E. 14-2, D.E. 14-3).

23. The Defendant's Answer to GELB's Amended Complaint admits that venue is proper in the Southern District of Florida, (D.E. 12, ¶ 6), and also admits that the Southern District Court of Florida has personal jurisdiction over it. (D.E. 12, ¶ 5).

24. On August 13, 2012, the Defendant renewed its forum shopping tactics by filing its motion to transfer venue back to the Southern District of New York.

25. The Defendant's Motion to Transfer Venue is yet another attempt at procedural gamesmanship, designed to vex, harass, delay litigation, and needlessly increase the costs for the injured party. Based on the foregoing facts of this case and the supporting Memorandum

of Law that follows, this Court should enter an Order denying the Defendant's Motion to Transfer Venue to the New York Southern District.

## MEMORANDUM OF LAW

The Defendant continues to delay litigation with five (5) months of various forum shopping tactics.  After being advised that GELB's law suit was being filed, the Defendant raced to the court house in New York to file a declaratory action in a strategic attempt to deny GELB his chosen forum.  Shortly thereafter, and without service of process, the Defendant filed a Motion to Enjoin GELB's law suit in the Southern District of Florida.  While the New York Court considered GELB's Motion to Dismiss, the Defendant continued its harassing and vexatious tactics of attempting to cause GELB to expend litigation finances.  "[T]he deposition of a defendant should 'be held in the district of his residence.'" *Dagen v. CFC Group Holdings LTD*, 2003 WL 21910861, at *2 (S.D.N.Y. Aug. 11, 2003) (string citations omitted).  Yet, the Defendant unilaterally set GELB, as the New York defendant, for deposition in New York on a single date certain and "continuing day to day thereafter until complete."  The Southern District Court of New York dismissed and closed the Defendant's case, deferring to GELB's chosen Florida forum. However, the Defendant continues to pursue a more favorable forum with its Motion to Transfer Venue from GELB's chosen and proper venue.

### Summary of Arguments

The Southern District of Florida is GELB's chosen home forum and proper venue.  The Defendant concurs and admits that venue is proper in Florida. (D.E. 12, ¶ 6).  The courts of the Eleventh Circuit affirm that "'[t]he plaintiff's choice of forum should not be disturbed unless the movant can show that it is clearly outweighed by other considerations.'" *Miramar Investment, LLC v. Preferred Income Partners IV, LLC*, No. 2:12–cv–106, 2012 WL 2872879, at *2

(M.D.Fla. April 11, 2012) (citing *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir.1996)). "'**Transfer can only be granted where the balance of convenience strongly favors the defendant**.'" *Miramar Inv., LLC,* 2012 WL 2872879 at *2 (quoting *Stateline Power Corp. v. Kremer*, 404 F. Sup.2d 1373 (S.D. Fla. 2005); and citing, Robinson, 74 F. 3d at 260)). However, the balance of convenience overwhelmingly favors GELB.

Additionally, the Defendant has avoided addressing a significant threshold matter. Specifically, that the Defendant pleaded and litigated the issue of venue which the Southern District of New York dismissed and deferred to the Southern District of Florida. The Defendant's re-litigation of a decided matter is merely a strategic but dilatory waste of judicial resources. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979).  It can be logically and reasonably extrapolated from the case history and the Defendant's conduct that the Defendant's sole purpose of propounding its Motion to Transfer is to vex and harass the Plaintiff and cause him to expend finances in litigation delays.

    **I.**    **The Motion to Transfer Venue Should Be Denied Because New York Courts Do Not Have Jurisdiction Over GELB and the Balance of Factors Weighs Overwhelming in GELB's Favor.**

The Southern District of Florida is the proper venue because it is GELB's home forum. The Defendant has admitted liability and concedes that venue is proper in Florida. The Defendant, as movant, has not met its burden to show with any particularity an overwhelming inconvenience in this venue.  Moreover, the Defendant has admitted in its answer that this Court has personal jurisdiction over it. Conversely, GELB disputes the personal jurisdiction of the New York court over him.  Further, in addition to the presence of GELB's experts in Miami, Florida and numerous other factors addressed, below, equity disfavors a transfer from GELB's home forum. GELB is a private individual and the injured party who must bear all the costs of litigation

against the admitted tortfeasor, a multi-million dollar, international business that is indemnified by its insurer and represented by legal teams in both New York and Florida.

Under 28 U.S.C. § 1404(a), a federal district court sitting in diversity may, "[f]or the convenience of the parties and witnesses, in the interest of justice, . . . transfer any civil action to any other district or division where it might have been brought."  Courts have broad discretion to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

"The question of whether to transfer venue is a two-pronged inquiry." *Mason v. Smithklein Beecham Clinical Laboratories*, 146 F.Supp.2d 1355, 1359 (S.D.Fla. 2001).  First, the alternative venue must have jurisdiction over the plaintiff. *See id*. "The second prong requires courts to balance private and public factors to determine if transfer is justified." *Id.* "Defendants moving for transfer of venue have a heightened burden as they must prove with particularity the inconvenience caused by the plaintiff's choice of forum." *Id.* "Transfer can only be granted where the balance of convenience of the parties strongly favors the defendant." *Id.*

In this case, neither prong of the test to transfer venue under U.S.C. § 1404(a) is satisfied. First, venue is not proper in New York because that state's courts do not have personal jurisdiction over GELB. Second, the balance of private and public factors weigh heavily in favor of venue in Florida because Florida is GELB's home forum;  the Defendant does not dispute liability, eliminating the need for witness testimony as to liability; the valuation of physical damage to the SCULPTURE can be assessed from photographs; GELB's expert witnesses are Miami, Florida residents, several of whom have submitted affidavits in support of their opinions; GELB is a single individual, damaged by the Defendant and independently bearing the costs and fees associated with litigation. The cost and inefficiencies of litigating in New York would

overwhelmingly hurt GELB as compared to the Defendant litigating in Florida. The Defendant is a large corporate entity with International locations and litigation costs indemnified by AXA Art Insurance, one of the largest insurers in the world.  (AXA is a foreign corporation authorized by the Florida Division of Corporations to conduct business in Florida.)  The Defendant has two legal teams, one in New York and another in Miami. GELB's attorneys are solely in Miami and transfer would require repeated payment of fees for Pro Hac Vice status and travel expenses. Additionally, the Consignment Agreement was executed in Miami, Florida. Upon sale, payment was to be made to GELB in Miami.  Unsold items were to be returned to GELB.

The Defendant hangs their entire motion on the location of its tortious conduct and the damaged art work. However, those factors are both irrelevant and bear no weight because the Defendant has already admitted liability for the physical damage; and, the expense of delivering the SCULPTURE to Miami is the Defendant's contractual but unperformed obligation.  The Defendant fails in its heavy burden of establishing that the balance of convenience does not belong to the Plaintiff and his chosen forum.

### A.  Venue Is Not Proper In New York Because New York Courts Do Not Have Personal Jurisdiction Over GELB.

The Defendant's Motion to Transfer Venue Pursuant to U.S.C. § 1404(a) should be denied because New York courts do not have personal jurisdiction over GELB sufficient to satisfy New York's long-arm statute, N.Y.C.P.L.R. § 302(a)(1).

The Defendant erroneously claims that a New York court has authority to exercise personal jurisdiction over GELB pursuant to N.Y.C.P.L.R. § 302(a)(1).  The basis for the Defendant's claim is the presence of the SCULPTURE in New York, and a Consignment Agreement between GELB and the Defendant.  It is uncontested that the Consignment Agreement was negotiated via emails and telephone calls to GELB in Miami and ultimately executed in Miami.  Neither the

chattel nor the Consignment Agreement establish personal jurisdiction over GELB because it is insufficient to establish GELB's "presence" in New York for jurisdictional purposes.

For the New York court to have personal jurisdiction pursuant to N.Y. C.P.L.R. § 302(a)(1), the Defendant must establish GELB's "presence" by engaging in business "with some degree of permanence and continuity." *Daewoo Int'l (America) Corp. v. Orion Eng'g and Serv. Inc.*, 2003 WL 22400198, at *1 (S.D.N.Y. Oct. 20, 2003). "New York law requires that the [party] be present in New York not occasionally or casually, but with a fair measure of permanence and continuity." *JLB Equities, Inc. v. Ocwen Fin. Corp.*, 131 F. Supp.2d 544, 548 (S.D.N.Y. 2001); *Landoil Res. Corp. v. Alexander & Alexander Serv., Inc.*, 918 F.2d 1039, 1043 (2d. Cir. 1990).

"New York courts have placed a strong emphasis on the locale of contract negotiations to find that a defendant has transacted business in New York." *Dogan v. Harbert Construction Co.*, 507 F.Supp. 254, 260 (S.D.N.Y.1980). "It is settled law in New York that interstate negotiations by telephone do not subject the caller to the jurisdiction of the receiver." *Id.* at 261. New York courts even decline to extend jurisdiction over non-domiciliaries who merely ship goods into New York; business transactions must be a systematic engaging in business in New York. *McGowan v. Smith*, 52 N.Y.2d 268, 271-272 (4th Dep't. 1981). Courts look at other factors relating to the alleged transaction of business, including presence of New York bank accounts, ownership of real property in New York, or an office in New York. *JLB,* 131 F. Supp.2d at 548.

In *Daewoo*, the federal district court did not have personal jurisdiction over a nonresident corporation under N.Y.C.P.L.R. § 302(a)(1) because no part of negotiations leading to a $20 million loan underlying the suit took place in New York. *Id.*, 2003 WL 22400198, at *2. Even a subsequent trip to New York to discuss aspects of the loan did not count as sufficient contact because "when the visit is 'not for the purpose of initiating or forming a relationship, but is to

alleviate problems under a pre-exiting relationship, New York courts have declined to assert jurisdiction.'" *Id.* at *3. "[U]nder CPLR 302 . . . signing of an agreement in New York did not suffice to confer jurisdiction." *Anderson v. Ind. Black Expo, Inc.*, 81 F. Supp.2d 499, 501-502 (S.D.N.Y. 2000) (citing and quoting *Presidential Realty Corp. v. Michael Square West, Ltd.*, 44 N.Y.2d 672, 673-674 (NY 1978)). "[W]here parties reach a full agreement in their respective home states . . . it is doubtful that [NY] jurisdiction would be sustained." *Anderson*, 81 F.Supp.2d at 502. Therefore, the Defendant is incorrect in its theory that the telephone and e-mail solicitation by the Defendant to obtain the Consignment Agreement establishes personal jurisdiction. The Consignment Agreement was negotiated by phone and internet and executed in Miami, Florida. "[I]t is settled law in New York that interstate negotiations by telephone do not subject the caller to the jurisdiction of the receiver." *Dogan*, 507 F.Supp. at 261.

The Defendant has not shown any substantial or continuing contacts or presence by GELB sufficient to establish personal jurisdiction. GELB has no New York bank accounts, no real property in New York, and no office in New York. Upon the contingent sale of the SCULPTURE, payment was to be delivered to GELB at his domicile and residence in Miami, Florida. Both *Daewoo* and *JLB* were dismissed for lack of personal jurisdiction, because none of the contract negotiations were conducted in New York. Likewise, the Consignment Agreement was negotiated with the Defendant via telephone and internet and then the Consignment Agreement was delivered to GELB in Miami, Florida via internet where it was executed. GELB's only visit to the gallery was on a social trip after the execution of the Consignment Agreement. No contract negotiations took place and GELB did not meet with James Cohan during that brief visit. Pursuant to the Consignment Agreement drafted by the Defendant, unsold items were to be returned to Miami. Payment was to be made to GELB in Miami. Moreover,

10

GELB did not select the Defendant for its New York or Shanghai location but because the Defendant exclusively represented the artist Roxy Paine, with a sales history for his art works.

The Defendant cites to *Miller v. Calotychos,* 303 F.Supp.2d 420 (S.D.N.Y. 2004) and *Ulster Scientific, Inc. v. Guest Elchrom Scientific AG,* 181 F.Supp.2d 95 (N.D.N.Y. 2001) for the proposition that a "single act" confers personal jurisdiction in New York.  However, both cases cited were decided on different grounds.  In *Miller,* personal jurisdiction was found due to numerous business meetings in New York that substantially advanced and led to a close business partnership and formation of a business; the parties attended conventions and trade shows in New York, the parties met in New York with New York customers to generate New York business, and the parties entered into long term business relationships in New York. 303 F.Supp.2d at 421.  In *Ulster Scientific,* the evidence was that for twenty years the New York plaintiff was the defendant's sole distributor in the United States; all goods were shipped into and distributed from New York; the defendant's agents met in New York many times about a distributorship agreement and, later, in connection with the plaintiff's late payments; and the defendant's agent "participated extensively" in New York in negotiations for a  Guest agreement and to establish a new distributorship agreement. 181 F.Supp.2d. at 102.

GELB's Consignment Agreement is insufficient to allege personal jurisdiction over GELB in New York.  GELB neither negotiated for the contract in New York nor did he meet with the Defendant in New York to discuss the contract.  GELB is not in a partnership or an ongoing business relationship with the Defendant such that would confer personal jurisdiction of a New York court.  GELB has no other business ties to the Defendant.  GELB maintains no bank accounts, records, no office, and does not own real property in New York.

11

The Defendant alleges that GELB delivered goods in to the stream of commerce. That is an inaccurate allegation, as GELB's only obligation under the Consignment Agreement was to permit the Defendant to sell his chattel. GELB is not the tortfeasor and did not project himself or have any obligations for which he could reasonably anticipate being haled in to court. The Consignment Agreement expressly states that the Defendant "will be responsible for round-trip shipping costs." The Defendant contractually undertook all responsibility and unilaterally made all arrangements to transport and collect the art works from third parties and third party locations. None of the art was shipped or delivered by GELB or picked-up from GELB's possession, residence, or domicile. And, merely shipping goods to New York without a systematic engaging in business transactions is insufficient to establish personal jurisdiction over a nondomiciliary. *McGowan*, 52 N.Y.2d at 271-272. Further, the factors set forth by *JLB* weigh the presence of real property, not chattels. *See* 131 F. Supp.2d at 548.

The Defendant has failed to establish a *prima facie* case for meeting the jurisdictional requirements of §302(a)(1)§ to assert personal jurisdiction over GELB. Based on the factors identified in JLB and the law cited herein, GELB is not subject to the jurisdiction of a court applying New York's long arm statute. Therefore, the Defendant's Motion to Transfer Venue Pursuant to U.S.C. § 1404(a) should fail to meet the first prong.

**B.  The Balance of Factors Weigh Heavily in Favor of GELB's Choice of Forum.**

The Southern District of Florida should retain this case because the factors to consider in a transfer of venue analysis weigh heavily in the favor of GELB, whereas the Defendant has not met its burden of showing an overwhelming inconvenience of litigating in this venue.

Courts rely on a number of factors in the second prong analysis including: "(1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses, and availability of witnesses through compulsory process; (4) the location of documents and other

12

sources of proof; (5) the relative ability of the parties to bear the expense of changing forum; and (6) trial efficiency and expense to the justice system." *Mobile Diagnostic Imaging, Inc. v. Gormezano, et al.*, No. 12–60888–CIV, 2012 WL 3244664, at *4 (S.D.Fla. Aug. 9, 2012).

1. The Plaintiff's Choice of Forum.

Courts afford deference to the plaintiff's choice of forum, as "[t]he plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Mason*, 146 F.Supp.2d at 1359; *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir.1996) (also holding that plaintiff's choice of forum should not be disturbed unless it is "clearly outweighed" by other considerations); *Allied Specialty Ins. Inc. v. Ohio Water Parks, Inc.*, 699 F.Supp. 878, 882 (M.D.Fla.1988) ("the Court must give considerable weight to plaintiff's choice of forum"). Accordingly, "the Eleventh Circuit has determined that a court should be somewhat restrictive in transferring actions, stating that '[t]he plaintiff's choice of forum should not be disturbed unless the movant can show that it is clearly outweighed by other considerations.'" *Miramar Investment, LLC v. Preferred Income Partners IV, LLC*, No. 2:12–cv–106, 2012 WL 2872879, at *2 (M.D.Fla. April 11, 2012) (citing *Robinson*, 74 F.3d at 260).

The Supreme Court of the United States articulated the rationale behind this long-standing principle in *Koster v. (American) Lumbermens Mut. Cas. Co*., 330 U.S. 518, 524-25 (1947):

**Where there are only two parties to a dispute, there is good reason why it should be tried in the plaintiff's home forum if that has been his choice. He should not be deprived of the presumed advantages of his home jurisdiction except upon a clear showing of facts which either (1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems. In any balancing of conveniences, a real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown.**

13

The Defendant's reliance on *Motorola Mobility Company v. Microsoft Corp.*, 804 F. Supp. 1271 (S.D. Fla. 2011) to support a transfer is misplaced and attempts to minimize the standard for the premise that minimal deference should be granted to GELB's home forum.   However, Motorola is inapplicable. In that case, the court gave little weight to the plaintiff's choice of forum as the original venue was not the home venue of *either* party.

The Defendant also cites to *Fine Art Services v. Zurich American Insurance*, No. 12-cv-21307 (S.D.Fla. May 5, 2004), which relied on *Windmere Corp. v. Remington Products, Inc.*, 617 F. Supp. 8 (S.D. Fla. 1985).   *Windmere* involved four parties. The plaintiff's chosen forum was not afforded great weight because the three *Windmere* defendants were located in the transferred forum.   There are only two parties to this cause of action.   As stated in *Koster* and its progeny, great weight should be given to GELB's choice of venue because it is his home forum and his "'choice of forum should not be disturbed . . .'" *Mason*, 146 F.Supp.2d at 1359.

2.   <u>The Convenience of the Parties</u>.

"Although the relative inconvenience the parties face by changing venue is a factor in determining whether transfer is appropriate, "[w]here a transfer 'merely shifts the inconvenience from one party to another, Plaintiff's choice of forum should remain.' " *Kenneth F. Hackett & Assocs., Inc. v. GE Capital Info*, No. 10–20715–CIV., 2010 WL 3056600, at *4 (S.D.Fla. Aug. 4, 2010).   There are only two parties to this action. The Defendant regularly does business in Miami Beach, Florida at Art Basel. The Defendant is financially obligated by contract to ship the Sculpture to Miami. The Defendant has a legal team in Miami. The Defendant has shown little, if any, inconvenience in GELB's choice of forum other than vague assertions that do not rise to "oppressiveness" or "vexation." Therefore, GELB's choice of forum should remain.

14

3. <u>The Convenience and Availability of the Witnesses through Compulsory Process.</u>

While courts give great weight to this factor, "the court must qualitatively evaluate the materiality of the testimony that the witness[es] may provide" with respect to the issues in the case. *Id.* In addition, "transfer may be denied when the witnesses, although in another district, are employees of a party and their presence can be obtained by that party." *Mason*, 146 F.Supp.2d at 1361.

The Defendant's employees are likely repetitive witnesses, but none are needed litigate the tort because the Defendant has admitted liability. And, as employees of the Defendant, their presence can be obtained by the Defendant. The only witness identified by the Defendant is a conservator who has not committed to appearing. His presence also can be obtained by the Defendant, who is in a better position to pay travel and lodging expenses than GELB for his numerous local experts. The affidavits of three of GELB's Miami-based art experts are attached.

The Defendant's unidentified experts do not have to reside in New York to render an opinion on the value of the physically damaged SCULPTURE. James Cohan has lectured and given interviews espousing his internet-based art fairs and the ability of collectors to evaluate, assess, and purchase fine art via online imagery. Certainly educated experts can assess and value the damage in an identical manner.

The Defendant hinges its Motion on the Court's opinion in *Fine Art Services v. Zurich American Insurance*, No. 12-cv-21307 (S.D.Fla. May 5, 2004). The opinion gave greatest weight to the location of the tort. But *Fine Art Services* is factually distinct from the issue herein. In that case, the liability was contested and witnesses were needed to prove the operative facts of the tort, a factor to which the judge gave great weight to the exclusion of all other factors. Unlike the defendant in *Fine Art Services*, the Defendant herein does not contest

liability, repeatedly admitting its responsibility as the tortfeasor.  Therefore, the Defendant's employees are not needed to prove that a tort occurred.  The only matter for litigation is the amount of damages, which are not location specific.  GELB's expert witnesses on the remaining issue of damages are all based in Miami, Florida.

The convenience of witnesses favors a Florida venue based on the materiality of the testimony by the Miami witnesses.  A New York venue would be an overwhelming inconvenience for the Miami witnesses and would be an impediment to their providing testimony.  The cost of travel and lodging for experts would be a greater burden to GELB than the Defendant.

4.   <u>The Location of Documents and Other Sources of Proof.</u>

This is not a determinative factor as documents, photographs of the easily visible damage, correspondence, and email are all readily available and accessible in Miami. In addition, it is the Defendant's unperformed contractual obligation to deliver the art to GELB.

5.   <u>The Relative Ability of the Parties to Bear the Expense of Changing Forum</u>.

Proportionately, the cost and inconvenience to GELB, a private individual, to litigate this case in New York is vastly greater than to the Defendant. The Defendant is a sophisticated international multi-million dollar business. As pointed out by the Defendant in its Motion, the Defendant is insured and indemnified by AXA. The Defendant's motion attempts to strategically use financial considerations to coerce GELB to its goals, as evidenced by the case history and the instant motion. Notably, this factor was also not addressed by the *Fine Arts Services* opinion cited and relied on by the Defendant.

6.  <u>Trial Efficiency and Expense to the Justice System</u>.

Venue in the Southern District of Florida appropriate because it is the more judicially efficient venue.  In the Southern District of New York, the median time for disposition of a civil case is 39.5 months and the time from filing to trial in a civil case is 30.6 months.  Ex. L, Federal Court Management Statistics 2011, at 11.  Comparing the Southern District of Florida, the median time for disposition of a civil case is 4.8 months and the time from filing to trial in a civil case is 17.2 months. *Id.* at 92. The opinion in *Fine Arts Service* relied on by the Defendant never addressed this factor.

Judicial efficiency and the interests of justice are served by keeping the litigation in GELB's home forum.  The Southern District of Florida has undisputed jurisdiction over the Defendant. The New York court could have kept the case, as it was its discretion, but for the Defendant's (and AXA's) procedural gamesmanship.

7.  <u>Other Factors</u>

This Court, sitting in diversity jurisdiction, is bound to apply Florida law as the forum state. See *National Fire & Marine Ins. Co. v. Adorable Promotions, Inc.,* 451 F. Supp. 2d 1301, 1305 (M.D. Fla. 2006).  "Florida follows the *lex loci contractus* doctrine, which provides that . . . a contract is governed by the law of the state in which the contract is made." *Id.* "'A Contract is made at the place where the last act necessary to complete the contract is done." *Id.* at 1306. On January 11, 2012, the Defendant delivered to GELB in Miami, Florida, a consignment agreement already signed by the Defendant.  Two days later, on January 13, 2012, GELB signed and returned the Agreement.  The last act necessary to complete the Agreement was GELB's signature accepting the terms. Therefore, as the last signatory to execute the Agreement was in Miami, Florida, the Agreement was formed in Florida jurisdiction and Florida law should apply.

The Southern District of Florida has an interest in preventing improper use of settlement negotiations and in preventing thinly veiled forum shopping. In its motion, the Defendant violated Rule 11 of the Federal Rules of Civil Procedure, Rule 408 of the Federal Rules of Evidence, and Rules 3 and 4 of Florida Bar Rules by unprofessionally and unethically attaching confidential settlement offers expressly and boldly marked, "For Settlement Purposes Only." The settlement documents do not fall under any exception to Federal Rules of Evidence Rule 408. The Defendant's only purpose in attaching the documents is its continuing spin aimed at casting GELB in a bad light. Such a usage is in violation of professional rules of conduct. Based on this tactic and its improper anticipatory filing in New York, one can conclude that the Motion to Transfer Venue is similarly designed to be vexatious and harass the injured party while avoiding addressing the actual issues (even after admitting to liability) rather than to seek justice.

The second prong of the § 1404(a) inquiry also fails, because the balance of public and private factors weigh heavily in the favor of venue in the Southern District of Florida. Therefore, transfer should be denied for failing to demonstrate "oppressiveness and vexation."

**II.     The Motion to Transfer Venue Should be Denied Because the Issue of Venue Was Already Decided When the Southern District of New York District Court Dismissed the Defendant's Improper Anticipatory Filing.**

The proper venue for this action was already decided when the Southern District of New York District Court found the Defendant's declaratory judgment action against GELB to be an improper anticipatory filing designed to secure a venue other than the Southern District of Florida. The issue of venue should not be needlessly re-litigated where the Southern District of New York District Court dismissed the Defendant's declaratory judgment action against GELB as an improper anticipatory filing.

An improper anticipatory filing is one where a party "attempts to exploit the first-filed rule by securing a venue that differs from the one that the filer's adversary would be expected to choose." D.E. 14-4, at 3-4. (quoting *Ontel Products Inc. v. Project Strategies Corp.*, 899 F.Supp. 1144, 1150 (S.D.N.Y. 1995).  "An exploitative use of the DJA by a party to secure a 'procedural advantage' and deny its adversary a preferred forum 'militates in favor of dismissing the declaratory judgment action.'" D.E. 14-4, at 5 (internal citations omitted).

Issue preclusion encompasses "collateral estoppel" and "direct estoppel." *In re Air Crash Near Rio Grande Puerto Rico on December 3, 2008*, No. 11–cv–80059, 2012 WL 113774, at *3 (S.D.Fl.a Jan 13, 2012) (internal citations omitted).  Issue preclusion "has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979).  Issue preclusion operates when:

(1) the issue at stake is identical to the one involved in the prior litigation;

(2) the issue must have been actually litigated in the prior suit;

(3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and

(4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding.

*Air Crash, at *3*. (internal citations omitted).  Offensive issue preclusion may be used when "the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party." *Parklane Hosiery*, 439 U.S. at 326 n. 4.

Issue preclusion bars the Defendant's litigation of venue again.  First, the identical issue of venue was already argued by the Defendant in the New York case 12-CV-02561-HB.  In that

action, "Plaintiffs contend that this action should remain here and that the first-filed rule is applicable." D.E. 14-4.   Second, the issue was litigated as evidenced by Hon. Baer's order dismissing and closing the New York case and denying the Defendant's motion to enjoin the suit in the Southern District of Florida. *See* D.E. 14-4.   Third, the issue of venue was discussed and was critical to the order although the New York District Court did not have to reach a balancing of convenience factors. *See* D.E. 14-4.   Finally, the docket for the New York case evidences that the Defendant had a full and fair opportunity for a hearing. *See* Ex. K, Docket 12-CV-02561-HB.

The Defendant's Motion to Transfer Venue to the Southern District of New York should be denied because this issue has already been decided in a federal court and the Defendant should be barred from a second bite at the apple.

<u>CONCLUSION</u>

WHEREFORE, for the foregoing reasons, the Court should exercise its discretion and deny the Defendant's Motion to Transfer Venue.

Dated: August 24, 2012

Respectfully submitted,

By: __s/  Brooke Terpening_____
      Brooke Terpening, Esq. (FBN: 059574)
      E-mail: brooke@lenamonlaw.com
      Lenamon Law PLLC
      100 N. Biscayne Blvd, Suite 3070
      Miami, FL 33132
      Phone: 305.905.0139
      Fax: 786.425.2380
      *Attorney for the Plaintiff*

By: __s/  Stephen D'Oench Field_____
      Stephen D'Oench Field, Esq. (FBN: 554111)
      E-mail: steve@field-law.com
      Stephen D. Field, P.A.
      102 East 49th Street
      Hialeah, FL 33013
      Phone: 305.798.1335
      Fax: 305.698.1930
      *Attorney for the Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served electronically using CM/ECF on August 29, 2012 on all counsel or parties of record on the Service List below.

s/Brooke Terpening
Brooke Terpening

**SERVICE LIST**

Michael A. Monteverde
Simon, Reed & Salazar, P.A.
Dadeland Centre I
9155 S. Dadeland Blvd.
Suite 1218
Miami, FL 33156
305-670-0776
305-670-0731 (fax)
mmonteverde@simonreedlaw.com

Michael Simon
Simon, Reed & Salazar, P.A.
9155 South Dadeland Blvd.
Suite 1218
Miami, FL 33156
305-670-0776
305-670-0731 (fax)
msimon@simonreedlaw.com